UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

MIGUEL CRESPO,

                                      Plaintiff,      COMPLAINT

      -against-

                                                    20 Civ. 2637

NATIONAL RAILROAD PASSENGER CORPORATION,
GEORGE GERNON, and JOSEPH NATIVO,          **JURY TRIAL DEMANDED**

                                      Defendants.
--------------------------------------------------------------------------x

       Plaintiff Miguel Crespo, by his attorneys, Law Office of Gregory P. Mouton, Jr., LLC, respectfully alleges:

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Mr. Crespo's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## JURY DEMAND

5. Mr. Crespo demands a trial by jury in this action.

## PARTIES

6. Plaintiff Miguel Crespo is a resident of the County of Bronx, State of New York.

7. Defendant National Railroad Passenger Corporation (doing business as, and hereinafter referred to as "Amtrak") is and was, at all times relevant herein, a public for-profit corporation organized and existing under the laws of the United States, with its principal offices located in the District of Columbia. Amtrak is not an agency or establishment of the government of the United States.

8. Pursuant to 49 U.S.C. § 24305(e), Defendant Amtrak is authorized to employ police officers.

9. At all times relevant herein, Defendant George Gernon was a supervisor, officer, employee, and/or agent of Defendant Amtrak.

10. Upon information and belief, pursuant to N.Y. Railroad L. § 88, Defendant Gernon was appointed as a police officer, with all the powers of a police officer in cities and villages, for the preservation of order and of the public peace, and the arrest of all persons committing offenses upon the land of or upon property in the custody of or under the control of of Amtrak in the State of New York.

11. At all times relevant herein, Defendant Gernon was acting within the scope of his employment with Defendant Amtrak.

12. At all times relevant herein, Defendant Gernon was acting under color of state law.

13. Defendant Gernon is sued in his individual and official capacities.

14. At all times relevant herein, Defendant Joseph Nativo was a supervisor, officer, employee, and/or agent of Defendant Amtrak.

15. Upon information and belief, pursuant to N.Y. Railroad L. § 88, Defendant Nativo was appointed as a police officer, with all the powers of a police officer in cities and villages, for

the preservation of order and of the public peace, and the arrest of all persons committing offenses upon the land of or upon property in the custody of or under the control of of Amtrak in the State of New York.

16. At all times relevant herein, Defendant Nativo was acting within the scope of his employment with Defendant Amtrak.

17. At all times relevant herein, Defendant Nativo was acting under color of state law.

18. Defendant Nativo is sued in his individual and official capacities.

19. Defendant Amtrak is responsible for the appointment, training, supervision, promotion, and discipline of its police officers and supervisory police officers, including the individually named defendants herein.

STATEMENT OF FACTS

20. On May 31, 2017, Mr. Crespo was a customer of Blarney Stone, located at 410 8th Avenue, New York, New York ("Subject Property"). Mr. Crespo was standing outside the entrance to Blarney Stone smoking a cigarette and speaking to three other gentlemen who were also customers of Blarney Stone.

21. The Subject Property is not owned or controlled by Defendant Amtrak.

22. As they were speaking, Defendants Nativo and Gernon walked past the entrance to Blarney Stone. One of the gentlemen that Mr. Crespo was speaking with asked what kind of cop Defendant Nativo was because his uniform was not the same as a New York City Police Department officer.

23. Mr. Crespo responded that he was an Amtrak police officer.

24. Defendant Nativo overheard what Mr. Crespo said and said to him, "What did you say?"

25. Mr. Crespo responded to Defendant Nativo that he wasn't talking to him, and that he was speaking with the three gentlemen he was with.

26. Defendant Nativo said, in sum and substance, "Well, I heard you say Amtrak police."

27. Mr. Crespo responded that he was trying to explain that Defendant Nativo is an Amtrak officer and not part of the NYPD.

28. Defendant Nativo became offended by this, and started explaining the ways in which he was the same as an officer with the NYPD.

29. Mr. Crespo stated to him that no one was debating what Amtrak officers can do, but that if someone were to dial 9-1-1, an Amtrak officer would not come to help.

30. This made Defendant Nativo even angrier.

31. Defendant Nativo demanded Mr. Crespo's identification.

32. Mr. Crespo refused to provide his identification and said that he was leaving.

33. Defendant Nativo grabbed Mr. Crespo to prevent him from leaving and told him that if he did not show him his identification, he would get tased, placing Mr. Crespo in fear of bodily harm and, potentially, death.

34. Not wanting to get tased, Mr. Crespo pulled out his wallet, opened his wallet, and held up his wallet so that Defendant Nativo could see his identification.

35. Attached to the inside of his wallet was a miniature detective's courtesy shield that had been given to Mr. Crespo by a member of the NYPD.

36. The individual defendants recognized the NYPD detective's courtesy shield as that.

37. After letting Defendant Nativo look at his identification, Mr. Crespo closed the wallet and told Defendant Nativo that he wanted to leave.

38. Defendant Nativo said that Mr. Crespo could not leave and that he wanted to see his identification again.

39. Mr. Crespo stated that he had already showed Nativo his identification, and that he wanted to leave.

40. Defendants Nativo and Gernon positioned their bodies so as to block Mr. Crespo from leaving and placing Mr. Crespo in fear for his safety.

41. Mr. Crespo continued to try to leave. Defendant Nativo then stated, "That's it. You're under arrest for impersonating a police officer."

42. Mr. Crespo protested, but Defendant Gernon placed his hand on his taser and told Mr. Crespo he would be tased if he resisted.

43. Defendants Nativo and Gernon then placed Mr. Crespo in handcuffs, purposefully placing them on Mr. Crespo too tightly. Mr. Crespo pleaded with them to loosen the handcuffs, but they refused.

44. Mr. Crespo's arrest was without probable cause.

45. Mr. Crespo's arrest was both effected and approved by the individual defendants at the Subject Property.

46. The individual defendant searched Mr. Crespo and then forced him to walk toward Pennsylvania Station, with Defendant Gernon walking in front of Mr. Crespo, and Defendant Nativo walking behind Mr. Crespo.

47. As they walked, Defendant Nativo, while Mr. Crespo was handcuffed and walking in front of him, shoved Mr. Crespo and kicked his back foot in an attempt to shove and trip Mr. Crespo to the ground.

48. This caused Mr. Crespo stumbled forward, and twisted injured both of his ankles, but Mr. Crespo was able to catch himself before falling to the ground. He turned around and asked Defendant Nativo why he had done that, to which Defendant Nativo laughed and responded, "I thought you were going to flee."

49. Defendant Nativo continued following Mr. Crespo back to and into Pennsylvania Station. During the walk, Mr. Crespo continued to fear for his physical safety and life as a result of the battery that had just taken place on him, and because he was unable to see or defend himself against Defendant Nativo.

50. The individual defendants brought Mr. Crespo to the Amtrak police station inside of Pennsylvania Station. There, Defendant Nativo asked Mr. Crespo where his belongings were. Mr. Crespo told him that they were at Blarney Stone, but did not ask Defendant Nativo to get his property.

51. Defendant Nativo left the Amtrak police station and returned to Blarney Stone. There, he demanded Mr. Crespo's belongings from the bartender there, who had placed Mr. Crespo's belongings behind the bar for safe keeping.

52. After retrieving Mr. Crespo's belongings, Defendant Nativo returned to the Amtrak police station inside Pennsylvania Station.

53. Once back inside the station, Defendant Nativo dumped Mr. Crespo's bag out and searched through his belongings without a warrant or Mr. Crespo's permission. During the search,

the individual defendants questioned Mr. Crespo about the items in his bag, and discussed what other charges might be a possibility

54. Mr. Crespo also overheard the individual defendants loudly discussing what charges they could place on Mr. Crespo.

55. The individual defendants held Mr. Crespo in custody for approximately five hours before finally releasing him with a desk appearance ticket ("DAT").

56. Upon information and belief, the individual defendants falsely alleged in the DAT that Mr. Crespo had violated New York Penal Law §§ 190.25(3) (Criminal Impersonation of a public servant in the second degree).

57. The individual defendants spoke with the New York County District Attorneys' Office, individually and collectively lying to the New York County District Attorney's Office that, *inter alia*, Mr. Crespo had violated New York Penal Law §§ 190.25(3) (Criminal Impersonation of a public servant in the second degree) by, among other things, displaying the NYPD detective's shield and stating that he was a New York State Police Trooper.

58. Based on these fabricated allegations, the New York County District Attorney's Office forwarded to Defendant Gernon a Criminal Court Complaint.

59. The Criminal Court Complaint was reviewed and then signed by Defendant Gernon.

60. When reviewing and signing the Criminal Court Complaint, Defendant Gernon knew the allegations contained therein to be false.

61. The executed Criminal Court Complaint was then forwarded by Defendant Gernon to the New York County District Attorney's Office.

62. Legal process was issued against Mr. Crespo, and Mr. Crespo was subsequently arraigned on, upon information and belief, August 1, 2017.

63. Mr. Crespo was released on his own recognizance and subject to the requirements of N.Y. Crim. Proc. Law § 510.40(2), requiring him to "render himself at all times amenable to the orders and processes of the court." Mr. Corso was directed by the Court to reappear in court on September 26, 2017.

64. During the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the New York County District Attorney's Office, *inter alia*, arrest reports, complaint reports, statements falsely attributed to Mr. Crespo, evidence vouchers, and property vouchers.

65. Mr. Crespo reappeared in criminal court on September 26, 2017, where he was released on his own recognizance and subject to the requirements of N.Y. Crim. Proc. Law § 510.40(2), requiring him to "render himself at all times amenable to the orders and processes of the court." Mr. Corso was directed by the Court to reappear in court on November 15, 2017.

66. Mr. Crespo reappeared in criminal court on November 25, 2017, where he was released on his own recognizance and subject to the requirements of N.Y. Crim. Proc. Law § 510.40(2), requiring him to "render himself at all times amenable to the orders and processes of the court." Mr. Corso was directed by the Court to reappear in court on February 5, 2018.

67. Mr. Crespo reappeared in criminal court on February 5, 2018, where he was released on his own recognizance and subject to the requirements of N.Y. Crim. Proc. Law § 510.40(2), requiring him to "render himself at all times amenable to the orders and processes of the court." Mr. Corso was directed by the Court to reappear in court on August 3, 2018.

68. Mr. Crespo reappeared in criminal court on August 3, 2018, at which time the charges against him were dismissed pursuant to N.Y. Crim. Proc. Law § 170.55

69. Mr. Crespo suffered damage as a result of Defendants' actions. Mr. Crespo was, *inter alia*, deprived of liberty and suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

### FIRST CAUSE OF ACTION
*State & Federal Unlawful Stop and Search*

70. Mr. Crespo repeats and realleges each and every allegation as if fully set forth herein.

71. Defendants violated the Fourth and Fourteenth Amendments, as well as state law, because they stopped and searched Mr. Crespo without reasonable suspicion.

72. As a direct and proximate result of this unlawful conduct, Mr. Crespo sustained the damages alleged herein.

### SECOND CAUSE OF ACTION
*State & Federal False Arrest*

73. Mr. Crespo repeats and realleges each and every allegation as if fully set forth herein.

74. The individual defendants violated the Fourth and Fourteenth Amendments, as well as state law, because they arrested Mr. Crespo without probable cause.

75. As a direct and proximate result of this unlawful conduct, Mr. Crespo sustained the damages alleged herein.

## THIRD CAUSE OF ACTION
*State & Federal Excessive Force*

76. Mr. Crespo repeats and realleges each and every allegation as if fully set forth herein.

77. The individual defendants violated the Fourth and Fourteenth Amendments, as well as state law, because they used unreasonable force on Mr. Crespo.

78. As a direct and proximate result of this unlawful conduct, Mr. Crespo sustained the damages alleged herein.

## FOURTH CAUSE OF ACTION
*State & Federal Fabrication of Evidence*

79. Mr. Crespo repeats and realleges each and every allegation as if fully set forth herein.

80. The individual defendants created false evidence against Mr. Crespo including, but not limited to, statements individual defendants falsely attributed to Mr. Crespo, as well as the Criminal Court Complaint.

81. The individual defendants forwarded false evidence to prosecutors in the New York County District Attorney's Office.

82. In creating false evidence against Mr. Crespo, and in forwarding false evidence to prosecutors, the individual defendants violated Mr. Crespo's right to substantive due process under the Due Process Clause of the Fifth, Fourth, and Fourteenth Amendments of the Constitution of the United States, as well as state law.

83. As a direct and proximate result of this unlawful conduct, Mr. Crespo sustained the damages alleged herein.

## FIFTH CAUSE OF ACTION
*State & Federal Malicious Abuse of Process*

84. Mr. Crespo repeats and realleges each and every allegation as if fully set forth herein.

85. The individual defendants issued and/or caused to be issued legal process to place Mr. Crespo under arrest.

86. The individual defendants arrested Mr. Crespo in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their personal animus against Mr. Crespo, to demonstrate to Mr. Crespo that they had the power to arrest him like an NYPD officer, and to punish Mr. Crespo for what they perceived was Mr. Crespo's negative view on Amtrak police officers.

87. The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the New York County District Attorney's Office and continuing to participate in the prosecution of Mr. Crespo.

88. The individual defendants acted with intent to do harm to Mr. Crespo without excuse or justification.

89. As a direct and proximate result of this unlawful conduct, Mr. Crespo sustained the damages alleged herein.

## SIXTH CAUSE OF ACTION
*State & Federal Failure to Intervene*

90. Mr. Crespo repeats and realleges each and every allegation as if fully set forth herein.

91. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

92. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, as well as state law.

93. As a direct and proximate result of this unlawful conduct, Mr. Crespo sustained the damages alleged herein.

## SEVENTH CAUSE OF ACTION
*Conspiracy under 42 U.S.C. § 1983*

94. Mr. Crespo repeats and realleges each and every allegation as if fully set forth herein.

95. The individual defendants and members of the New York County District Attorney's Office jointly participated in the deprivation of Mr. Crespo's constitutional rights as set forth herein.

96. The individual defendants conspired in the deprivation of Mr. Crespo's constitutional rights by collectively lying about Mr. Crespo's actions and conduct, and intentionally withholding and/or destroying exculpatory evidence in order to support the individual defendants' fabricated version of the events.

97. As a result of the individual defendants' malicious efforts to damage Mr. Crespo, Mr. Crespo's liberty was restricted, and Mr. Crespo was restrained, subjected to handcuffing, and, among other things, falsely arrested, strip searched, and prosecuted.

98. As a direct and proximate result of this unlawful conduct, Mr. Crespo sustained the damages alleged herein.

EIGHTH CAUSE OF ACTION
*Negligence*

99. Mr. Crespo repeats and re-alleges each and every allegation as if fully set forth herein.

100. Defendants failed to take any steps to protect Mr. Crespo, including providing supervision.

101. As a result of the foregoing, Mr. Crespo was caused to suffer severe personal injuries.

102. Said injuries were the result of the negligent, careless, reckless, wanton, illegal, and improper acts of the defendants, their agents, servants, or employees, including, but not limited to, failing to supervise the individual defendants; in violating the New York State Human Rights Law; in violating the New York City Administrative Code; in allowing Mr. Crespo's welfare to become endangered; and in otherwise being negligent.

103. As a result of the foregoing, Mr. Crespo has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## NINTH CAUSE OF ACTION
*Negligent Supervision & Retention*

104. Mr. Crespo repeats and re-alleges each and every allegation as if fully set forth herein.

105. Defendant Amtrak knew or should have known of the individual defendants' propensity for the conduct alleged herein.

106. Defendant Amtrak failed to take any steps to protect Mr. Crespo from the actions and/or inactions of the individual defendants.

107. The injuries sustained by Mr. Crespo were the result of the negligent retention and/or supervision of the individual defendants by Defendant Amtrak.

108. The individual defendants were supervisors, co-employees, and/or working together at Amtrak.

109. The individual defendants were negligent in that they failed to ensure that their co-employees provided proper supervision.

110. Despite knowing that their subordinates and/or co-employees were negligent, the Defendants continued to employ the individual defendants, and took no steps to rectify their actions.

111. As a result of the foregoing, Mr. Crespo was caused to suffer severe personal injuries.

112. Said injuries were the result of the negligent, careless, reckless, wanton, illegal, and improper acts of the defendants, their agents, servants, or employees, including, but not limited to, failing to supervise the individual defendants; in violating the New York State Human Rights Law; in violating the New York City Administrative Code; and in otherwise being negligent.

113. As a result of the foregoing, Mr. Crespo has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

### TENTH CAUSE OF ACTION
*Assault*

114. Mr. Crespo repeats and re-alleges each and every allegation as if fully set forth herein.

115. The individual defendants intentionally acted to place Mr. Crespo in apprehension of imminent harmful or offensive bodily contact.

116. Mr. Crespo suffered apprehension of imminent harmful or offensive bodily contact.

117. As a result, Mr. Crespo has been damaged has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

### ELEVENTH CAUSE OF ACTION
*Battery*

118. Mr. Crespo repeats and re-alleges each and every allegation as if fully set forth herein.

119. The individual defendants intended to make bodily contact with Mr. Crespo.

120. The individual defendants made bodily contact with Mr. Crespo.

121. Consequently, Mr. Crespo suffered bodily contact which was harmful, offensive, and without Mr. Crespo' consent.

122. As a result, Mr. Crespo has been damaged has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

### TWELFTH CAUSE OF ACTION
*Monell*

123. Mr. Crespo repeats and realleges each and every allegation as if fully set forth herein.

124. This is not an isolated incident. Defendant Amtrak, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Crespo.

125. Defendant Amtrak, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

126. Defendant Amtrak, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

127. For instance, Defendant Amtrak was aware of several instances of misconduct by Defendant Nativo including instances of excessive force and false arrest occurring, among other times, on January 21, 2012, and February 6, 2014. Defendant Amtrak was also aware of several instances of misconduct by Defendant Gernon, including an incident that occurred on October 13, 2011.

128. Defendant City of Amtrak, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

129. These policies, practices, and customs were the moving force behind Mr. Crespo injuries.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Crespo respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 29, 2020

By: /s/
Gregory P. Mouton, Jr., Esq.
Law Office of Gregory P. Mouton, Jr., LLC
*Attorneys for Plaintiff Miguel Crespo*
1441 Broadway, 6th Floor
New York, NY 10018
Phone & Fax: (646) 706-7481

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIGUEL CRESPO,

Plaintiff,

-against-

NATIONAL RAILROAD PASSENGER CORPORATION, GEORGE GERNON, and JOSEPH NATIVO,

Defendants.

COMPLAINT

LAW OFFICE OF GREGORY P. MOUTON, JR., LLC

1441 Broadway, 6th Floor
New York, NY  10018
Phone & Fax: (646) 706-7481